(No. 18727.—

The City of Chicago, Appellee, *vs.* Arthur T. Galt, Appellant.

*Opinion filed December 20, 1929.*

LYMAN, ADAMS, BISHOP & DUPEE, (DANIEL S. WENT-WORTH, and HOWARD F. BISHOP, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, and GOTT-HARD A. DAHLBERG, (JOSEPH J. THOMPSON, and HELMER C. PATTERSON, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The city of Chicago filed a petition in the county court of Cook county for the levy of a special assessment to defray the cost of constructing a sewer in, and paving the roadways of, the alleys between Loyola avenue, Arthur avenue, Sheridan road and Lakewood avenue, in that city. Arthur T. Galt, owner of certain lots abutting on the proposed improvement, filed objections to the confirmation of the assessment. His objections were overruled, judgment of confirmation followed, and he prosecutes this appeal.

Appellant objects that the records of the board of local improvements fail to show at length the ordinance submitted to the city council and hence that the ordinance passed by the council is void and afforded the county court no basis for the jurisdiction which it subsequently exercised. Section 7 of the Local Improvement act (Cahill's Stat. 1929, p. 341; Smith's Stat. 1929, p. 498), provides that all ordinances for local improvements to be paid for wholly or in part by special assessment or special taxation shall originate with the board of local improvements; that the board shall adopt a resolution describing the proposed improvement and fixing a day and hour for the public consideration thereof; that the board shall cause an estimate of the cost of the improvement to be made in writing by the engineer of the board, over his signature; that the resolution shall be at once transcribed into the records of the board and that the estimate shall be made a part of the record of the resolution. The same section further provides that a notice of the time and place of the public hearing shall be sent by mail directed to the person who paid the general taxes for the last preceding year on each lot or parcel of land fronting on the proposed improvement not less than five days prior to the time set for the hearing, and that the notices shall contain the substance of the resolution, the estimate of cost, and a notification that the extent, nature, kind, character and estimated cost of the proposed improvement may be changed by the board at the public hearing. Section 8 provides that at the time and place fixed for the public hearing the board shall meet and hear the representations of any person desiring to be heard on the subject of the necessity for the proposed improvement, its nature or its cost as estimated; that in case any person shall object to the proposed improvement or any of its elements, the board shall adopt a new resolution abandoning the proposed scheme or adhering thereto, or, without a further public hearing, modifying its extent, nature,

kind, character and estimated cost where the change will not increase such cost to exceed twenty percentum; and thereupon, if the proposed improvement be not abandoned, that the board shall cause an ordinance to be prepared for submission to the council or board of trustees, prescribing the nature, character, locality and description of the improvement and providing whether it shall be made wholly or in part by special assessment or special taxation of contiguous property. By section 9 it is provided that, with the ordinance, the board of local improvements shall present to the city council or board of trustees, a recommendation of the improvement, signed by at least a majority of the members of the board; that the recommendation shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with, and that, if a variance be shown on the proceedings in court, it shall not affect the validity of the proceedings, unless the court shall deem the variance willful or substantial.

The records of the board of local improvements, introduced in evidence, show that on December 29, 1926, a meeting of the board was held at which a resolution for the construction of the improvement in question, describing it at length, was adopted; that an estimate of the cost of the improvement made by the board's engineer was approved; that the board by the same resolution fixed Friday, January 14, 1927, at 10 A. M., in the council chamber in the city hall, as the time and place for the public consideration of the improvement, and that the resolution and the estimate were transcribed into the board's records. These records further show that notices of the public hearing were mailed in accordance with the statute; that the hearing was held at the time and place fixed, and that after the hearing the board adopted a resolution adhering to the proposed improvement and directing the submission to the city council of the requisite ordinance with a recommendation that the improvement be made. The same records show

that the board, at its meeting held on January 17, 1927, considered and approved the engineer's estimate of the cost of the proposed improvement and an ordinance providing for its construction, and directed that the ordinance and a recommendation that the improvement be made in accordance therewith be presented to the city council. The recommendation, estimate and ordinance were submitted to the city council, and that body, on January 19, 1927, approved the estimate and passed the ordinance.

Appellant makes no complaint that, prior to the consideration, approval and submission of the instant ordinance to the city council, the board of local improvements failed to comply with the requirements of the seventh, eighth and ninth sections of the Local Improvement act. His objection is that any record of the ordinance or of the action taken by the board upon or concerning it which omits a complete transcript of the ordinance is insufficient and fatal to the proceeding. The Local Improvement act makes no such requirement. If the legislature had deemed it wise or necessary to require the incorporation in the records of the board of local improvements of a complete transcript of the ordinance to be presented to the city council, express provision to that end would undoubtedly have been made. Illustrations of this fact are not wanting for the seventh section of the act contains such provisions with respect to the original resolution adopted by the board and the engineer's estimate of cost. Moreover, after the public hearing is concluded, the tax-payer has neither occasion nor opportunity again to appear before the board of local improvements. If, upon the conclusion of the public hearing, the board adheres to its plan that the proposed improvement shall be made, it causes an ordinance for that purpose to be prepared and transmitted to the city council. The council, and not the board, has the power to pass the ordinance, and until that power is exercised the necessity for

the incorporation in the public records of a complete transcript of a local improvement ordinance is not apparent.

A complete transcript of the ordinance in the records of the board of local improvements, appellant insists, is required by *Village of Bellwood* v. *Galt,* 321 Ill. 504. It was there stipulated that, with respect to the particular improvement, no action taken after the adoption of the second resolution had been taken and entered of record by the board of local improvements. In the instant case the board's records affirmatively show its subsequent consideration and approval of the engineer's estimate of cost and of the requisite ordinance and its direction that the ordinance and a recommendation of the improvement be transmitted to the city council. What was lacking in *Village of Bellwood* v. *Galt* is here supplied and the former case is not in point.

It is urged by the appellant that the board of local improvements "lost its jurisdiction to legislate in this matter on and after January 14, 1927." The contention is without merit for two reasons, first, the board has no legislative powers; and second, it could not adjourn *sine die* on January 14, 1927, for by section 6 of the Local Improvement act, as it stood at the time in question, the board of local improvements in cities having a population of one hundred thousand or more was required to hold daily sessions for the transaction of all business in rooms accessible to the public provided by the city council.

On the hearing, the petitioner introduced in evidence, among other documents, the recommendation of the board of local improvements, the engineer's estimate of cost, the ordinance, the affidavit showing the mailing and posting of the requisite notices, and the report and assessment roll. Appellant objects that the appellee omitted to offer in evidence the petition for confirmation filed in the county court; that by reason of this omission, the appellee failed to establish a *prima facie* case entitling it to a judgment confirm-

ing the assessment, and that, in consequence, the petition should have been dismissed. The petition is a part of the record. (*City of Carlyle* v. *Nicolay,* 333 Ill. 562; *City of Marengo* v. *Eichler,* 245 id. 47; *Houston* v. *City of Chicago,* 191 id. 559; *Foss* v. *City of Chicago,* 184 id. 436; *Lundberg* v. *City of Chicago,* 183 id. 572). For that reason, proof of the petition was unnecessary to establish appellee's *prima facie* case.

The ordinance provides for the improvement of "the alleys between Loyola avenue, Arthur avenue, Sheridan road and Lakewood avenue." Loyola avenue and Arthur avenue are parallel streets, running east and west. Lakewood avenue and Sheridan road run north and south and are parallel to each other. Loyola avenue is one block north of Arthur avenue and Lakewood avenue is one block west of Sheridan road. Loyola avenue was formerly Hayes street and from a point west of Lakewood avenue extended east to Sheridan road where it turned slightly to the north and ran thence east to Lake Michigan. A number of years ago an elevated railroad running northwesterly and southeasterly was built across Sheridan road a short distance south of Loyola avenue and across the latter street about 100 feet west of Sheridan road. The railroad embankment prevented access to Sheridan road over Loyola avenue from the west. To remedy this situation, the city of Chicago, by the exercise of the power of eminent domain, acquired a strip of land parallel to and adjoining the westerly side of the railroad embankment and running from Loyola avenue to Sheridan road. This strip between 150 and 200 feet long was opened as a public street. No name was given to it by the ordinance which directed its acquisition by condemnation proceedings. Thereafter traffic on Loyola avenue, east-bound from Lakewood avenue, proceeded southeasterly on the new diagonal street to Sheridan road. If the destination was a point on Loyola avenue east of Sheridan road, traffic would proceed north on Sheridan road

about 200 feet instead of approximately 50 feet as formerly, and thence east on Loyola avenue. Appellant objects that the ordinance, in fixing the locations of the proposed sewer, catch-basins, man-holes and pavement, makes reference to the "westerly line of Loyola avenue"; that Loyola avenue has no westerly line, and that, in consequence, the ordinance is uncertain, indefinite, and void. Two civil engineers called by the appellant testified that they were unable to locate the westerly line of Loyola avenue, and hence that the description of the proposed improvement set forth in the ordinance was indefinite. They based their opinions upon the ordinance and certain maps introduced in evidence which failed to disclose that the diagonal street had been named. After the railroad embankment cut off access to Sheridan road over Loyola avenue from the west in a straight line, the two streets were connected by the strip of land adjoining the embankment which the city acquired for street purposes. This connection, less than 200 feet in length, was merely an extension of Loyola avenue, and there was no necessity formally to give it a name. Places of business facing the diagonal portion of the street were given Loyola avenue street numbers. Six residents of the vicinity, called by the appellee, testified that the diagonal street always had been known as Loyola avenue. This testimony did not contradict, but supported, the ordinance and was competent. (*Ewart* v. *Village of Western Springs,* 180 Ill. 318; *Village of Donovan* v. *Donovan,* 236 id. 636). The westerly line of Loyola avenue is therefore definitely ascertainable and appellant's contention that, with respect to the description of the proposed improvement, the ordinance is uncertain cannot be sustained.

The judgment of the county court is affirmed.

*Judgment affirmed.*